IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **METIS COMPANY, INC.**, a Michigan corporation,<br><br>                **Plaintiff,**<br><br>vs.<br><br>**GEOMOMENT, INC.**, a Florida corporation,<br><br>**Defendant.** | Civil Action No.  2:16-cv-13932<br><br>Hon. |

# COMPLAINT

Plaintiff, Metis Company, Inc. ("Metis" or "Plaintiff") brings this Complaint for injunctive relief, monetary damages, and all other appropriate remedies against Defendant Geomoment, Inc. ("Geomoment" or "Defendant").  For its Complaint, Metis alleges as follows:

## NATURE OF THE ACTION

1. This is an action for trademark infringement and unfair competition in violation of §43(a) of the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. § 1125(a), and MICH. COMP. LAWS § 429.42 *et seq.*; for violation of the Michigan Uniform Trade Secrets Act, MICH. COMP. LAWS § 445.1902; for violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836; for unfair trade practices in violation of the Michigan Consumer Protection Act, MICH. COMP. LAWS §§ 445.901, *et seq.*; for breach of the parties' Non-Disclosure Agreement; for unjust

enrichment; and for declaratory relief. Metis seeks all appropriate relief, including an order requiring Defendant to cease all uses of Metis's INTEXT trademark.

2. This action arises out of Defendant's knowing and willful violation of Plaintiff's rights in its distinctive trademark, INTEXT (the "Mark"), caused by Defendant's use in commerce of the identical INTEXT Mark for identical services.

3. Defendant's unlawful acts have caused and continue to cause consumers to believe that Metis is affiliated with Defendant or that Metis has endorsed Defendant's products and services, thus jeopardizing the goodwill associated with the INTEXT Mark, unjustly enriching Defendant, who benefits from the association, and causing confusion for consumers seeking Metis services on which they have come to depend.

4. On information and belief, Defendant's unlawful acts have lessened the capacity of the INTEXT Mark to identify and distinguish the services Metis provides under the Mark, thus diluting the Mark's distinctive quality.

5. In addition, on information and belief, Defendant has intentionally profited from its unauthorized use of the INTEXT Mark and has made unauthorized commercial use of the INTEXT Mark in interstate commerce to its benefit and to the detriment of Metis and of consumers, in violation of the laws set forth above.

6. In addition, Defendant's misappropriation of Metis's INTEXT Mark and unauthorized use of Metis's trade secrets constitutes a breach of the parties' written Non-Disclosure Agreement and violates both state and federal statutes protecting trade secrets.

## THE PARTIES

7. Plaintiff Metis is a corporation organized and existing under the laws of Michigan, with its principal place of business in Northville, Michigan. Since at least February of 2015, Metis has provided software platforms for marketing solutions using text-based peer-to-peer communications in the United States under its INTEXT Mark.

8. Defendant Geomoment, Inc. is a corporation organized and existing under the laws of Florida, with its principal place of business in Deerfield Beach, Florida. Beginning in 2016, Defendant began providing a software platform for text-based peer-to-peer communications in the continental United States under Plaintiff's INTEXT Mark.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action under 15 U.S.C. §§ 1121 and 1125(d), and under 28 U.S.C. §§ 1331, 1337 and 1338. This Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. §§ 1338(b) and 1367(a), as well as under general principles of supplemental and

3

pendent jurisdiction. Declaratory judgment jurisdiction is proper in this Court pursuant to 28 U.S.C. §2201(a). An actual and immediate controversy exists between the parties that requires a declaratory judgment to determine their respective rights and obligations.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because, upon information and belief, a substantial part of the events giving rise to the claims occurred in the Eastern District of Michigan.

**FACTS ENTITLING METIS TO RELIEF**

11. In 2014, Metis began working with ZipWhip, a Seattle-based landline-text-messaging service provider, on an application program interface (API) that would allow Metis to use ZipWhip's service backbone.

12. Metis and ZipWhip entered into a mutual nondisclosure agreement, and Metis began development of the API with a focus on marketing its service to automotive dealerships.

13. Through their agreement, Metis would market and sell its text-based marketing platform independently, but ZipWhip would provide Metis's customers with the ability to use the Metis service over the customers' existing landlines.

14. In February of 2015, Metis conceived of the name "InText," and began offering its proprietary platform under the name InText (the "INTEXT Mark").

15. At or around this time, Metis also began using the INTEXT Mark on its website.

16. Metis and ZipWhip agreed to the following regarding end user fees for the InText and ZipWhip services:

    a. If Metis signed the end user up for InText and ZipWhip, ZipWhip would charge Metis a fee for the service (a "Line Fee"), and Metis would pass the Line Fee on to the end user along with the fee for the InText service;

    b. If the end user was a ZipWhip customer before signing up for InText, ZipWhip could continue to charge the end user the Line Fee, and Metis would charge the end user independently for InText.

17. As part of its marketing campaign, Metis collaborated with CDK Global, LLC ("CDK"), a major computing-solutions provider to the automotive industry. On February 17, 2015, CDK sent information to its dealer vendors regarding InText, with the following description:

> InText is a texting application that, bundled with ZipWhip provides the ability to send and receive text messages by utilizing the dealerships existing landline phone numbers[.]  With the data integration InText can send an automated text to the customer or InText provides the ability to queue service text messages allowing the service advisor the opportunity to review messages being sent. InText has the capability for the customer to send a text, requesting a status of their repair or send a requesting a quote (sic) for a vehicle. InText provides a method for a sales person or BDC to text vehicle information to a customer.

18. CDK also promoted the InText platform on its website.

19. By the end of September of 2015, Metis had several automobile dealerships using the InText platform, including automobile dealerships in Michigan and Washington.

20. Also in 2015, ZipWhip introduced Metis to Defendant Geomoment; Like Metis, Geomoment was a re-seller of ZipWhip services.

21. Metis and Geomoment began discussions on a plan through which Geomoment would offer Metis's InText platform and services to Geomoment's customers using ZipWhip as a backbone (the "Combined Program").

22. Metis and Geomoment agreed that (pursuant to the agreement between Metis and ZipWhip), because Geomoment was already a ZipWhip customer, any Line Fees for Combined Program end users would be paid directly by Geomoment to ZipWhip; that is, Metis would *not* act as a middle-man for Geomoment's customers' Line Fees to be paid directly to ZipWhip.

23. In February of 2016, Metis and Geomoment entered into a mutual nondisclosure agreement ("NDA") so that they could further collaborate and determine how Metis's InText services could work with Geomoment's services.

24. After entering into their NDA, Metis provided Geomoment with access to its InText platform and services.

25. Metis and Geomoment then agreed to pilot the Combined Program at the Warren Henry Auto Group in Miami, Florida. The Combined Program was implemented at the Warren Henry Auto Group on March 4, 2016.

26. On information and belief, Geomoment also started marketing the InText platform as part of its services on the Geomoment website around this same time.

27. In or around July 2016, Metis learned that Geomoment had not been paying its Line Fee invoices to ZipWhip.

28. Because Geomoment was using the Metis InText platform, Geomoment's failure to pay its Line Fees began to cause strain on the relationship between Metis and ZipWhip.

29. On August 17, 2016, with the issue still unresolved, Metis requested that Geomoment:

> stop and abstain from using Metis's InText platform in its entirety . . . [including] the InText name and logo/likeness in any design/format, marking information that references InText including sales presentation material, all sales groups such as exteres, User Interface, and any other web sites, applications or programs that reference or contain InText.

30. Rather than acknowledging Metis's intellectual property rights, Geomoment began marketing its own, similar service under Metis's INTEXT Mark (the "Infringing Use").

7

31. Despite that Metis developed the INTEXT Mark and first used it in commerce, Geomoment filed its own trademark application on September 9, 2016 for the INTEXT Mark with the USPTO, Application Serial No. 87165668, alleging a date of first use of December 1, 2015, and a date of first use in commerce of February 1, 2016.

32. As part of the application, Geomoment's President, Jay Conrad, signed the application and declared, in relevant part:

> [T]o the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001 . . .

33. Days later, on September 13, 2016, Geomoment threatened to pursue several baseless claims against Metis and Metis's owner, Derek Fournier, including tortious interference and breach of the parties' Non-Disclosure Agreement.

34. On October 4, 2016, Metis sent Geomoment a Cease and Desist letter, reminding Geomoment that Metis is the owner and first user of the INTEXT Mark, and that Geomoment had been aware of the same since at least the time they began discussing a technology partnership in 2015.

8

35. Through its letter, Metis asked that Geomoment (1) cease and desist in the Infringing Use of the INTEXT Mark, (2) immediately withdraw its trademark application with the USPTO, (3) acknowledge no intent to pursue its claims against Metis or Mr. Fournier, and (4) agree to indemnify Metis for any claims arising out of Geomoment's use of the INTEXT Mark.

36. Geomoment provided no substantive response to Metis's letter.

37. On October 24, 2016, Metis filed two trademark applications with the USPTO: (1) Application No. 87212917 for the INTEXT Word Mark; and (2) Application No. 87212923 for the stylized INTEXT logo, both of which reflect Metis's February 17, 2015 first use in commerce.

38. The competing Metis and Geomoment applications remain pending.

## COUNT I
### (Federal Trademark Infringement and Unfair Competition in Violation of Section 43(a) of the Lanham Act)

39. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-38 above.

40. Defendant's Infringing Use violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because such action constitutes willful and deliberate use in commerce of Plaintiff's INTEXT Mark, which is likely to cause confusion, mistake, and deception as to the origin, sponsorship, or approval by Metis of

services promoted by Defendant, and which accordingly constitutes unfair competition and infringement of Plaintiff's INTEXT Mark.

41. On information and belief, Defendant's unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

42. Defendant's violation of this statute has irreparably damaged Metis, and Metis has no adequate remedy at law. Unless enjoined, Defendant will continue the Infringing Use, further injuring Metis and the public.

43. On information and belief, Defendant has received substantial revenues and substantial profits as a result of the Infringing Use, to which Defendant is not entitled, and Metis has also suffered damages as a result of Defendant's Infringing Use, for which Defendant is responsible.

## COUNT II
**(Violation of the Michigan Uniform Trade Secrets Act, MCL § 445.1902)**

44. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-43 above.

45. Metis maintains the confidentiality of certain data, materials, technology, software, specifications, business plans, financial information and other non-public information (the "Trade Secrets").

46. Metis took significant steps to maintain the confidentiality of its trade secrets, including execution of the NDA with Geomoment in February of 2016.

47. The Trade Secrets are of significant value to Metis, and Metis gains economic value from keeping the Trade Secrets from being generally known or known to its competitors.

48. The disclosure of the Trade Secrets would have a significant negative impact on Metis's business, profitability and its ability to compete in its industry.

49. Through its discussions regarding a possible business collaboration with Defendant, Metis shared certain Trade Secrets with Defendant. All such disclosures were explicitly covered under the parties' NDA.

50. Defendant has improperly used, disclosed and/or disseminated Metis's Trade Secrets for Defendant's own benefit

51. The Trade Secrets information that Defendant misappropriated derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. This information thus constitutes "trade secrets" under Mich. Comp. Laws § 445.1902(d).

52. In misappropriating Metis's Trade Secrets in violation of the NDA and to compete against Metis, Geomoment obtained Metis's Trade Secrets through "improper means" under Mich. Comp. Laws § 445.1902.

53. Defendant's unauthorized use and dissemination of Metis's Trade Secrets constitutes misappropriation under Mich. Comp. Laws § 445.1902(b).

54. As a direct result of Defendant's misappropriation and dissemination of Metis's Trade Secrets, Metis has been harmed and continues to face additional harm.

## COUNT III
### (Violation of Federal Defend Trade Secrets Act, 18 U.S.C. § 1836)

55. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-54 above as if fully set forth herein.

56. Metis took significant steps to maintain the confidentiality of its trade secrets, including execution of the NDA with Geomoment in February of 2016.

57. The Trade Secrets are of significant value to Metis, and Metis gains economic value from keeping the Trade Secrets from being generally known or known to its competitors.

58. The disclosure of the Trade Secrets would have a significant negative impact on Metis's business, profitability and its ability to compete in its industry.

59. Through its discussions regarding a possible business collaboration with Defendant, Metis shared certain Trade Secrets with Defendant. All such disclosures were explicitly covered under the parties' NDA.

60. Defendant has improperly used, disclosed and/or disseminated Metis's Trade Secrets for Defendant's own benefit

61. The Trade Secrets information that Defendant misappropriated derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. This information thus constitutes "trade secrets" under 18 U.S.C. § 1839(3).

62. In misappropriating Metis's Trade Secrets in violation of the NDA and to compete against Metis, Geomoment obtained Metis's Trade Secrets through "improper means" under 18 U.S.C. § 1839(6).

63. Defendant's unauthorized use and dissemination of Metis's Trade Secrets constitutes misappropriation under 18 U.S.C. § 1839(5).

64. As a direct result of Defendant's misappropriation and dissemination of Metis's Trade Secrets, Metis has been harmed and continues to face additional harm.

65. Pursuant to 18 U.S.C. § 1836(3), Metis is entitled to recover damages, royalties, exemplary damages, costs and attorneys' fees.

## COUNT IV
**(Unfair Competition in Violation of the Michigan Consumer Protection Act)**

66. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-65 above.

{37786/1/D1100708.DOC;2}

67. The Infringing Use violates the Michigan Consumer Protection Act, MICH. COMP. LAWS § 445.901 *et seq.*, because it has caused, and continues to cause, a probability of confusion or misunderstanding as to the source, sponsorship, approval or certification of services provided. Further, Defendant's Infringing Use violates the act because it represents that Defendant's products and services have sponsorship or approval of Metis that they do not enjoy.

68. Defendant's conduct has had, and will continue to have, an adverse impact on Metis and on members of the general public because it wrongly suggests a cooperative business relationship that does not exist in fact. As a direct and proximate result of Defendant's unfair business practices, members of the general public have mistakenly believed, and will continue to mistakenly believe, that Defendant's businesses, and the services provided by Defendant, are approved or endorsed by, or otherwise affiliated with, Metis.

69. Upon information and belief, Defendant has received substantial revenues and substantial profits as a result of the Infringing Use, to which Defendant is not entitled, and Metis has also suffered damages as a result of Defendant's unauthorized use of the Mark, for which Defendant is responsible.

70. On information and belief, Defendant's unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

71. Metis and the general public have been, and continue to be, irreparably damaged by the violation of this statute, and Metis has no adequate remedy at law. Unless enjoined, Defendant will continue the Infringing Use, further injuring Metis and confusing the public.

### COUNT V
### (Breach of Parties' Non-Disclosure Agreement)

72. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-71 above.

73. Pursuant to the parties' NDA, Defendant was precluded from using any of Metis's Trade Secrets for any reason other than the expressed "Authorized Purpose," which was to develop "a collaborative SaaS platform tool utilizing both Geomoment Inc proprietary technology and Metis Company proprietary technology and services."

74. The NDA is a valid and binding contract between Metis and Geomoment.

75. In violation of the NDA, Geomoment used Metis's Trade Secrets for purposes other than the Authorized Purpose.

76. Upon information and belief, Geomoment used Metis's confidential materials, technology, software, specifications, business plans, financial information and other Trade Secrets divulged by Metis under the NDA to create

15

and market a platform nearly identical to Metis's InText platform, including misappropriation of the INTEXT Mark.

77. Geomoment's unauthorized use of the Trade Secrets divulged by Metis under the parties' NDA constitutes a breach of the NDA.

78. As a direct and proximate result of Defendant's breach of contract, Metis has suffered damages.

79. Pursuant to the express provisions of the NDA, Metis is entitled to damages and an injunction or other such equitable relief as may be necessary to protect it against Geomoment's breach of the parties' NDA.

## COUNT VI
### (Unjust Enrichment)

80. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-79 above.

81. Defendant is using and/or has received the benefit of using Metis's INTEXT Mark and Metis's Trade Secrets for its own use and benefit and to the detriment of Metis.

82. The conduct of Defendant is inequitable and provides them unjust enrichment.

83. Plaintiff is and will continue to be damaged by the conduct of Defendant, in an amount that cannot yet be ascertained.

## COUNT VII
### (Declaratory Judgment)

84. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-83 above.

85. There exists an actual and justiciable controversy regarding Metis's priority and first use of the INTEXT Mark.

86. In addition, Geomoment's September 13, 2016 threat to pursue claims against Metis and its owner created an actual and justiciable controversy as to whether Metis and its owner are liable to Geomoment for tortious interference and breach of the parties' NDA contract.

87. Metis is entitled to a declaratory judgment declaring, among other things, that:

    A. Metis is the sole owner of the INTEXT Mark and Metis has exclusive rights to use and seek federal registration of the INTEXT Mark; and

    B. Geomoment falsely and fraudulently certified to the United States Patent and Trademark Office that Geomoment was the only entity entitled to use the INTEXT Mark in commerce;

    C. Neither Metis nor its owner are not liable to Geomoment for tortious interference, breach of the parties' NDA, breach of any alleged verbal agreement, or any other cause of action.

**PRAYER FOR RELIEF**

WHEREFORE, Metis Company, Inc. respectfully seeks the following relief:

1.       Enjoin and restrain Defendant, its agents, affiliates, subsidiaries, principals, servants, employees, attorneys, and all persons in active concert or participation with any of them, from engaging in any of the following acts:

   a)    Using without authorization Metis's INTEXT Mark or any other name, logo, mark or design that that is confusingly or deceptively similar to the INTEXT Mark, either alone or in conjunction with other words or symbols, as a part of any trademark, service mark, logo, trade name, corporate name, assumed name, domain name, on or in relation to any goods or services performed by Defendant, or in any other manner; and

   b)    Using the word "intext" in any combination in the marketing, promotion, advertising, identification, sale or performance of goods or services, or in any form or manner that would tend to identify or associate Defendant or its business or services with Metis;

2.       Require Defendant, pursuant to 15 U.S.C. § 1118 to destroy all literature, signs, labels, prints, packages, wrappers, containers, advertising materials, Internet content, stationery, software, and any other items in their possession or control which contain the infringing mark or any term confusingly or deceptively similar to the INTEXT Mark, either alone or in combination with other words or symbols and to destroy all plates, molds, matrices, masters, and other means of making any of those infringing items;

3. Require Defendant to file with the Court and to serve on Metis, within thirty (30) days after the entry of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

4. Require Defendant to pay to Metis an amount yet to be determined to compensate Metis for all damages sustained as a result of Defendant's unlawful conduct described above, plus interest thereon, and require with respect to damages resulting from infringement or dilution of the Mark or from unfair competition under the Lanham Act that such damages be trebled pursuant to 15 U.S.C. § 1117;

5. Require Defendant to account for and pay to Metis all the profits derived by Defendant resulting from his use of Plaintiff's Mark, including, but not limited to any advertising revenue generated by any websites using the Mark;

6. Award Metis damages and injunctive relief pursuant to the Federal Defense of Trade Secrets Act, 18 U.S.C. § 1836.

7. Award Metis the costs of suit and its reasonable attorneys' fees in accordance with 15 U.S.C. § 1117, 18 U.S.C. § 1836(3), and Michigan law.

8. Award prejudgment interest on all liquidated sums; and

9. Award such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury as to all issues and causes of action so triable herein, pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

**KERR, RUSSELL AND WEBER, PLC**

/s/ Michael A. Sneyd
By: Michael A. Sneyd  (P52073)
*Attorneys for Plaintiff Metis Company, Inc.*
500 Woodward Avenue, Suite 2500
Detroit, Michigan  48226
(313)  961-0200
mas@krwlaw.com

Dated November 4, 2016

{37786/1/D1100708.DOC;2}